Whether the lands in question promised to young James, were more than a proportionable part of the father's estate to one child, is foreign to the present inquiry.    Marriage agreements in particular should have the utmost imaginable good faith accompanying them.

                                    Verdict for the plaintiff.

Messrs. Kittera, Hopkins and J. B. M'Kean, *pro quer.*
Messrs. Ingersoll and C. Smith, *pro def.*

---

## AT NISI PRIUS, AT YORK, OCTOBER ASSIZES, 1796.

### CORAM YEATES AND SMITH, JUSTICES.

---

ARCHIBALD STEEL *against* THOMAS DUNCAN and JAMES DUNLOP surviving administrators of DANIEL DUNCAN.

A settled account between other parties, is not evidence against a defendant.
    An officer of the United States, who has disbursed money in his public capacity, cannot support a suit in his own name for such money, till he has settled his accounts.

CASE.   The declaration contained two counts : 1st, Indebitatus assumpsit for 7125*l.* had and received to the plaintiff's use, and money laid out and expended at the request of the intestate. 2d, *Insimul computasset.*

It appeared in evidence, that David Duncan of Pittsburgh, assistant quarter master in the service of the United States, during the late war, had drawn an order on the plaintiff, then also in the quarter master's department, for a large sum of money, the exact amount whereof was not shown ; and that the same was payable to the defendant's intestate.

That on the 18th December 1779, the plaintiff wrote to the defendant's intestate, informing him that he could pay no more than 19,000 dollars thereon, and that it gave him pain not to comply with the order of the said David Duncan, but he hoped he would have it in is power to serve him in a short time.   The letter was subscribed by the plaintiff " as assistant quarter " master," and indorsed, " on public service."

On the next day, John Slaughter for Daniel Duncan passed his receipt to the plaintiff for 19,000 dollars, on account of David Duncan, which sum he promised to be accountable for.

The plaintiff then produced a settled account between himself and David Duncan, wherein the balance due from the said David to him, was struck, as 100, 684*l.* 14*s.* 9*d.*

This account was objected to, as *res inter alios acta*, and over-ruled by the court on that ground. The court moreover declared, that the plaintiff had not entitled himself to the present action. The trans-action between Daniel Duncan and him was merely confined to the order of David Duncan. It might have been given, for any thing. that appears to the contrary, on a private account between Daniel and David. And the suit would have more properly lain against David Duncan by the plaintiff in his private capacity, if he had settled his accounts as assistant quarter master with the United States. But until such settle-ment was made by the plaintiff, the money was only suable for, in the. name and for the use of the United States.

The counsel then said, they would tender a bill of exceptions, which was agreed to.

They afterwards agreed, that the suit should proceed for the benefit of the United States; but the court adhered to their former opinion.

Verdict for the defendants.

Messrs. Hamilton, Bowie and Montgomery, *pro quer*.

Messrs. Duncan and C. Smith, *pro def*.

---

RESPUBLICA *against* MICHAEL HEVICE, FREDERICK GELVIX and CATH-ARINE his wife, PETER GELVIX and DANIEL GELVIX and ELIZA-BETH his wife.

Yeates.
2y 11
166 41

On an indictment for conspiracy in inveigling a young girl from her mother's house. by false pretences, and procuring the marriage ceremony to be recited between her and one of the defendants, she being drunk, the girl is a competent witness, and a subse-quent carrying her off with force and threats may also be given in evidence.

CONSPIRACY. The indictment stated, that Catharine Speis was an infant of thirteen years of age, (her father, Peter Speis, being dead, and Susannah her mother married to Casper Gregor,) and under the guardianship of Michael Smyser and Matthias Smyser, both as to per-son and estate, and that the same Catharine was entitled to a large property under her father's will, to wit, 1000*l*., and resided with the said Casper and Susannah, with the consent of her said guardians; and that the said defendants well knowing the premises, on the 11th August 1795, did conspire together to deprive the said Casper and Susannah of the service of the said Catharine, and to seduce her from their house, and to inveigle her into a marriage with the said Michael Hevice, and under divers false pretences did seduce and inveigle the said Cath-arine for the purposes aforesaid, against the will of the said Casper